NOT DESIGNATED FOR PUBLICATION

No. 117,351

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

YUDID HERNANDEZ,
*Appellant*,

v.

NATIONAL BEEF PACKING COMPANY,

and

ZURICH AMERICAN INSURANCE COMPANY,
*Appellees*.

MEMORANDUM OPINION

Appeal from Workers Compensation Board. Opinion filed September 15, 2017. Affirmed.

*Stanley R. Ausemus*, of Stanley R. Ausemus, Chartered, of Emporia, for appellant.

*D. Shane Bangerter*, of Bangerter Law, P.A., of Dodge City, for appellees.

Before MCANANY, P.J., STANDRIDGE, J., and WALKER, S.J.

PER CURIAM: Yudid Hernandez appeals from the Workers Compensation Board's order affirming the administrative law judge's (ALJ) denial of Hernandez' claim for work disability benefits under K.S.A. 2016 Supp. 44-510e(a)(2)(E)(i) because she was terminated for cause. But substantial competent evidence supports the Board's finding that Hernandez was terminated for cause, so we affirm.

1

*Facts and Procedural History*

Hernandez began working at National Beef Packing Company in September 2009. She acknowledged the policy of National Beef to "not tolerate verbal or physical conduct by any employee that unlawfully harasses, disrupts, or interferences [*sic*] with another's work performance or that creates an intimidating, offense [*sic*] or hostile environment." The prohibited conduct included "[u]nwanted physical contact or conduct of any kind." A list of violations "warranting discipline up to and including discharge on first offense" included "fighting" or "interference or threat of injury to any person."

In December 2013 Hernandez suffered a repetitive-trauma work-related injury to her lumbar spine. She was treated for her injury with painkillers, hot and cold therapy, and steroid injections, and she continued to work at National Beef. In March 2014 Hernandez filed an application for workers compensation benefits for her back injury.

On February 13, 2015, Hernandez was involved in a physical altercation with her supervisor, Renee Rojas. According to Rojas, Hernandez approached him and began screaming at him about being hit with a beef liver by a coworker, Sergio Moreno. Hernandez slapped Rojas on his face and hard hat to demonstrate how hard Moreno had hit her. The slap was hard enough to knock Rojas' hat off of his head. Hernandez claimed she was merely demonstrating to Rojas, without making physical contact, how Moreno had hit her.

Sergio Garcia, an assistant human resources manager at National Beef, investigated the incident and took written statements from various witnesses. Moreno said he saw Hernandez make physical contact with Rojas. Another coworker, Francisco Marin, said he saw Hernandez "throw her hand" at Rojas. A third coworker, Gabriel Lopez, said he saw Hernandez hit Rojas and stated further that Hernandez has tried to hit

2

Lopez in the past. Rojas said Hernandez slapped him twice in order to demonstrate how hard Moreno had hit her.

In her written statement given to Garcia, Hernandez admitted making physical contact with Rojas' hard hat; but later at the regular hearing on her December 2013 back injury claim she denied touching Rojas.

Hernandez had received numerous warnings about violations of National Beef's workplace policies. These included complaints about absenteeism, her job performance, using foul language, verbally abusing coworkers, initiating unwanted or inappropriate physical contact with coworkers, and smoking in the employee locker room. At the regular hearing, Hernandez either denied these incidents or said that she did not remember them. She did admit, however, to receiving written warnings.

Two days after this February 13, 2015 incident, National Beef fired Hernandez because of her role in the physical altercation with supervisor Rojas.

Hernandez filed a union grievance over the termination of her employment, but the union chose not to pursue the matter. Hernandez was not allowed to return to work at National Beef.

Before the regular hearing on Hernandez' December 2013 back injury claim, the parties stipulated that she suffered a 10% impairment to the body as a whole.

Hernandez sought a work disability award for her back injury, claiming a work-related wage loss sustained after being discharged other than for cause. For support, Doug Lindahl, a vocational expert, opined that Hernandez suffered a 66.67% task loss and a 55.5% loss of earning capacity. But Garcia, testifying on behalf of National Beef, stated that National Beef could have accommodated Hernandez' back injury but for her

3

being fired for cause for the Rojas incident. Had Hernandez not been fired for cause, she would have been earning the same amount she had received before her injury.

The ALJ found that Hernandez had been terminated for cause for striking her supervisor. Having made this finding, the ALJ ruled that Hernandez was not entitled to a work disability award because her wage loss was caused by her own actions and was not attributable to her work-related injury. See K.S.A. 2016 Supp. 44-510e(a)(2)(E)(i). The ALJ awarded Hernandez compensation based solely on her 10% functional impairment.

Hernandez sought review by the Board. The Board reviewed the evidence, and the majority found that there was sufficient evidence to prove that Hernandez struck a supervisor and was terminated for cause. Hernandez' appeal brings the matter to us.

*Standard of Review*

This appeal turns on whether there is sufficient evidence to support the Board's finding that Hernandez was fired for cause. Work disability benefits are not available when an employee is fired for cause. See K.S.A. 2016 Supp. 44-510e(a)(2)(E)(i).

Our review is controlled by the Kansas Judicial Review Act (KJRA), K.S.A. 2016 Supp. 77-601 et seq. *Ribeau v. Russell Stover Candies*, 50 Kan. App. 2d 824, 832, 333 P.3d 921 (2014). We review the record as a whole in determining whether substantial evidence supports a finding by the Board. See K.S.A. 2016 Supp. 77-621(c)(7); *Moore v. Venture Corporation*, 51 Kan. App. 2d 132, 137, 343 P.3d 114 (2015). In making this determination, K.S.A. 2016 Supp. 77-621(d) requires that

> "the adequacy of the evidence in the record before the court to support a particular
> finding of fact shall be judged in light of all the relevant evidence in the record cited by
> any party that detracts from such finding as well as all of the relevant evidence in the

4

record, compiled pursuant to K.S.A. 77-620, and amendments thereto, cited by any party that supports such finding, including any determinations of veracity by the presiding officer who personally observed the demeanor of the witness and the agency's explanation of why the relevant evidence in the record supports its material findings of fact. In reviewing the evidence in light of the record as a whole, the court shall not reweigh the evidence or engage in de novo review."

On the other hand, we exercise unlimited review over the Board's conclusions of law and do not defer to the Board's interpretation of the law. See *Village Villa v. Kansas Health Policy Authority*, 296 Kan. 315, 322, 291 P.3d 1056 (2013).

In this appeal, Hernandez, the party claiming error, has the burden to show error. K.S.A. 2016 Supp. 77-621(a)(1); *Moore*, 51 Kan. App. 2d at 137. Thus, she must show that the evidence in the record is insufficient to support the Board's finding that her employment with National Beef was terminated for cause and, thus, she was not entitled to work disability benefits under K.S.A. 2016 Supp. 44-510e(a)(2)(E)(i).

*Analysis*

To obtain a work disability award, Hernandez had to prove that she suffered at least a 10% postinjury wage loss that was directly attributable to her work-related injury and not to some other cause. K.S.A. 2016 Supp. 44-510e(a)(2)(C)(ii). A wage loss that results from being terminated for cause cannot be construed as having been caused by the work-related injury. K.S.A. 2016 Supp. 44-510e(a)(2)(E)(i); *Dirshe v. Cargill Meat Solutions Corp.*, 53 Kan. App. 2d 118, 119, 382 P.3d 484 (2016).

The term "for cause" is not defined in the Act. But in *Dirshe*, this court applied the following test for determining whether the termination was reasonable, given all of the factual circumstances. First, the Board was required to consider whether the claimant made a good faith effort to retain his or her employment. Second, the Board was required

5

to consider whether the employer exercised good faith. Overall, the primary focus is on whether the employer's reason for termination was, in reality, merely a subterfuge to avoid having to pay work disability benefits. 53 Kan. App. 2d at 122.

The employee in *Dirshe* was fired for intentionally failing to cut off the cow tails as they went by on the line, creating unnecessary work for others and a food-safety risk. The Board noted that the employee had been counseled and written up for this problem of not performing his job on previous occasions. There was no evidence that the employer fired the employee merely to avoid work having to pay disability benefits. Thus, a panel of this court found no error in the Board's conclusion. 53 Kan. App. 2d at 123-24.

In *Weir v. Anaconda Co.*, 773 F.2d 1073 (10th Cir. 1985), the issue before the court was whether the employee was terminated for good cause so as to forfeit certain employment benefits. Applying Kansas law, the court stated:

> "'Cause' . . . is a shortcoming in performance which is detrimental to the discipline or efficiency of the employer. Incompetency or inefficiency or some other cause within the control of the employee which prohibits him from properly completing his task is also included within the definition. A discharge for cause is one which is not arbitrary or capricious, nor is it unjustified or discriminatory." 773 F.2d at 1080.

Here, there is substantial evidence in the record to support the Board's finding that Hernandez was terminated for cause. The Board considered inconsistencies in the witnesses' statements, Hernandez' lengthy prior disciplinary history, the length of time between Hernandez' injury and the termination of her employment, the testimony supporting Hernandez' claim of good faith and a benign state of mind at the time of the incident, eyewitness testimony that Hernandez struck Rojas, and National Beef's workplace rules of conduct. The Board concluded that even without considering the evidence that Hernandez objected to as hearsay, there was sufficient evidence to support a finding that Hernandez was terminated for cause.

6

Following the mandates of *Dirshe*, the Board considered Hernandez' good faith effort to retain her employment and found it to be lacking, explaining that yelling at and slapping Rojas was a violation of workplace rules and showed a lack of concern about her continued employment with National Beef. The Board also considered National Beef's good faith in terminating Hernandez' employment. National Beef conducted a thorough investigation of the Rojas incident, reviewed Hernandez' disciplinary history, involved the employee union, and allowed Hernandez an opportunity to make a statement. Hernandez had excuses for her conduct, but she admitted making physical contact with Garcia. The Board concluded that National Beef exhibited good faith in deciding to terminate Hernandez for cause.

Hernandez contends that the Board's consideration of her past employment record was in error because she was terminated solely for striking Rojas, not as a matter of progressive discipline for a series of violations. But the test articulated in *Dirshe* provides that the Board should consider all of the circumstances and evidence, not just the information provided in the termination document. Moreover, Garcia testified that Hernandez' past violations were taken into account in making the decision to fire her. The Board properly considered all of the circumstances surrounding Hernandez' situation in concluding that National Beef acted in good faith.

Finally, there is no indication that National Beef sought to terminate Hernandez as a ploy to avoid compensating her for her work-related back injury. Garcia testified that Hernandez' workplace restrictions could have been accommodated and she would have been paid the same after her accommodations were in place. Hernandez was fired more than a year after her accident, and there was nothing about her altercation with her supervisor that related to her workplace accident. Besides, Hernandez' workplace history of violations shows that she was disciplined many times prior to her injury, negating any contention that her disciplinary record was cooked up as a pretext for firing her. We find

7

substantial evidence that there was no improper motive behind National Beef's termination of Hernandez.

In seeking a reversal of the Board's order, Hernandez would have us reweigh the evidence and ignore our standard of review. See *Moore*, 51 Kan. App. 2d at 137-38. Applying the appropriate standard, we find substantial evidence supporting the Board's conclusion that Hernandez was terminated for cause and, therefore, was not entitled to work disability benefits. See K.S.A. 2016 Supp. 44-510e(a)(2)(E)(i).

Affirmed.